DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Ramon Gallardo, | ) | |
| | ) | CASE NO. 1:05CV1260 |
| Petitioner, | ) | 1:02CR408 |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| United States of America, | ) | (Resolving Doc. No. 1) |
| | ) | |
| Respondent. | ) | |
| | ) | |

**I**

Petitioner Ramon Gallardo was convicted of conspiracy to distribute more than five kilograms of cocaine in violation of 21 U.S.C. § 846 and possession with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and 18 U.S.C. § 2. He has now filed a Petition to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 1), to which the Respondent United States of America (the Government) has filed a Response (Doc. No. 5). For the following reasons, Gallardo's Petition is DENIED.

**II**[1]

On September 15, 2002, members of a drug interdiction task force learned from a confidential informant that Gallardo had checked into the Ramada Inn in Beachwood, Ohio, that he was uncertain how long he would stay, that he paid in cash, and that he had presented Arizona identification. A

---

[1] A more detailed background of this case can be found in the Sixth Circuit's opinion from Gallardo's direct appeal at United States v. Jacob, 377 F.3d 573 (6th Cir. 2004).

(1:05CV1260, 1:02CR408)

criminal history check revealed that Gallrdo had previously been arrested for transporting narcotics. After beginning surveillance of the Ramada Inn, the task force had Alex, a K-9 drug detection dog, check a Toyota Camry that they believed was associated with Gallardo, and Alex gave a positive indication to the trunk area of the vehicle and showed interest in the right rear wheel area.

The next day, the task force observed Gallardo entering the Camry, which he drove to a nearby hotel where he met with his co-defendant Anthony Jacob.  The task force also observed Gallardo engaging in counter-surveillance activities.  Around noon, the task force observed Gallardo, Jacob, and a female loading luggage, including a large green duffel bag later found to contain cocaine, into the trunk of the Camry.  Once the vehicle was loaded, Gallardo gave Jacob the keys to the vehicle, and Jacob began to drive it.

The task force followed the Camry in three or four vehicles.  The Camry began driving erratically, and, as a result, the task force believed that their surveillance had been compromised.  The task force decided to stop the vehicle.  An officer engaged his lights and sirens, and the Camry sped up and then stopped.  When other members of the surveillance team pulled up to block the Camry in, the vehicle lunged forward.  Other officers drew their weapons and ordered the occupants to exit the vehicle.  Once they had left the vehicle, the officers directed Gallardo and Jacob to the ground and then patted them down, finding a small amount of marijuana on Jacob.  Gallardo and Jacob were then handcuffed and placed in the back of a patrol vehicle which displayed a written notice that it contained an active recording device.  While they were in the patrol car, Gallardo and Jacob had a conversation that was recorded.

2

(1:05CV1260, 1:02CR408)

While Gallardo and Jacob were in the patrol car, Alex again sniffed the Camry and alerted on the trunk.  The task force searched the Camry and discovered in the trunk a green duffel that contained four large bricks and eight smaller bricks of cocaine.  As a result Gallardo and Jacob were charged with conspiracy to distribute more than five kilograms of cocaine and possession with intent to distribute more than five kilograms of cocaine.  Gallardo and Jacob both filed motions to suppress evidence obtained as a result of the search of the vehicle.  These motions were denied.

Jacob entered a conditional guilty plea and Gallardo proceeded to trial.  During the trial, a transcript of Gallardo and Jacob's conversation was utilized as an aid to the jury in following the tape recordings.  The transcript, however, was not admitted into evidence, and the jurors were instructed that if they heard something different from the transcript on the tapes, they should disregard the transcript. Gallardo contended that the transcript contained only one error.  He contended that the tapes revealed him stating "ah, oh, they found a bag," not the transcript's statement that "oh, oh, they found it man."  Gallardo raised his interpretation during his cross-examination of the transcriber and during his closing argument.  At the conclusion of the trial, the jury returned a verdict finding Gallardo guilty.

Gallardo and Jacob appealed to the Sixth Circuit, which affirmed this Court.  <u>United States v. Jacob</u>, 377 F.3d 573 (6th Cir. 2004).   Gallardo has now filed a Petition to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 1), to which the Government has filed a Response.  (Doc. No. 5).

**III**

3

(1:05CV1260, 1:02CR408)

### A

Gallardo's first ground for relief asserts that this Court abused its discretion by denying his motion to suppress evidence.  "A § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly unusual circumstances." United States v. Brown, No. 94-5917, 1995 WL 465802, *1 (6th Cir. Aug. 4, 1995) quoted in DuPont v. United States, 76 F.3d 108, 110 (6th Cir. 1996).  Gallardo argues that this Court abused its discretion because no illegal act was committed and the officers did not have probable cause prior to the traffic stop, and therefore, any evidence obtained as a result of the stop is the fruit of the poisonous tree.  This Court denied the motion to suppress because the evidence was obtained pursuant to a valid Terry stop.  On direct appeal, the Sixth Circuit agreed with this Court that the facts presented "provided a sufficient basis upon which the investigators conducted a Terry stop."  Jacob, 377 F.3d at 578.  Thus Gallardo's assertion that the traffic stop was not valid is an issue that was litigated on appeal.  There is no indication that this case involves highly unusual circumstances.  Gallardo, therefore, may not relitigate that issue in a § 2255 motion.

### B

Gallardo next challenges the admission of co-conspirator statements through recordings. Gallardo argues that the tape recording of the conversation between himself and Jacob should have been suppressed because the recordings were illegally obtained.  Presumably Gallardo is arguing that the recordings were obtained in violation of either the Fourth or Fifth Amendments.  "[T]o claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched and that his expectation is reasonable."  Minn. v. Carter,

4

(1:05CV1260, 1:02CR408)

525 U.S. 83, 89 (1998).  Here, the recorded conversation took place in the back of a police car which contained a sign indicating that it contained an active recording device.  Thus Gallardo was not in a location where he had any reasonable expectation of privacy when the conversation was recorded.  The tapes, therefore, were not obtained in violation of his Fourth Amendment rights.

Furthermore, "the Miranda safeguards [protecting the Fifth Amendment right to remain silent] come into play [only when] a person in custody is subjected to either express questioning or its functional equivalent."  R. I. v. Innis, 446 U.S. 291, 300-01 (1980).  "[T]he term 'interrogation' under Miranda refers . . . to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."  Id. at 301.  The tapes recorded a conversation between Gallardo and Jacob.  Thus, the statements on the tapes are not the result of any police interrogation.  The tapes, therefore, were not obtained in violation of Gallardo's Fifth Amendment rights.[2]

Moreover, on direct appeal, Gallardo challenged the admissibility of the tapes, and the Sixth Circuit concluded that the tapes were admissible.  Jacob, 377 F.3d at 580-81.  Additionally, to the extent that Gallardo's argument can be construed as relating to the manner in which he was detained while the recording was made, the Sixth Circuit also resolved that issue on direct appeal.  The Sixth Circuit held that "[s]ince the investigator's conduct in conducting the stop and in detaining the suspects .

---

[2]Gallardo seems to be complaining about a violation of Jacob's constitutional rights and not his own.  The Court's analyses of Gallardo's Fourth and Fifth Amendment claims does not address whether he may even assert them.

5

(1:05CV1260, 1:02CR408)

. . was reasonable under the circumstances, we conclude that the detention did not ripen into an unlawful arrest." Id. at 580. There are no extraordinary circumstances in this case. Therefore, under DuPont, Gallardo cannot relitigate this issue. Consequently, the admission of the tapes of the co-conspirator's statements do not constitute grounds for § 2255 relief.

## C

Gallardo also contends that it was prejudicial for the Court to allow the Government to introduce transcripts of the tapes into evidence. First, the Court did not allow the Government to introduce transcripts of the tapes into evidence, but rather permitted the jury to use the transcript as an aid at trial. Secondly, Gallardo litigated this issue on direct appeal. See Jacob, 377 F.3d at 581-82. The Sixth Circuit found "that Gallardo ha[d] not demonstrated prejudice and that the District Court did not abuse its discretion in permitting the jury to use a transcript as an aid during the trial and deliberations." Id. at 582. Thus Gallardo has already litigated this issue, and there are no extraordinary circumstances. Therefore, this issue cannot serve as the basis for a § 2255 motion. DuPont, 76 F.3d at 110.

Thirdly, any argument that Gallardo was harmed by a failure to present his own transcript is meritless because such a failure was harmless. As the Sixth Circuit noted, Gallardo only pointed to one discrepancy in the transcript, "he argued that the tape reveals Gallardo saying, 'ah oh, they found a bag,' not, as the government contends, 'oh, oh, they found it man.'" Id. Gallardo raised his interpretation of the transcript during both his cross-examination of the transcriber and during his closing argument. Id. Furthermore, the Court instructed the jurors that the transcript was not evidence and

6

(1:05CV1260, 1:02CR408)

that if they heard something different from what was on the transcript they should disregard the transcript. Id. Thus Gallardo was not harmed by a failure to present his own transcript at trial. Consequently, Gallardo's argument that it was prejudicial for the Court to allow the Government to present a transcript at trial is without merit.

## D

Gallardo lastly argues that he was denied the effective assistance of counsel because his counsel did not file a motion for a James or Enright hearing.[3] To establish an ineffective assistance of counsel claim, a defendant must show (1) "that counsel's representation fell below an objective standard of reasonableness" and (2) "that the deficient performance prejudiced the defense[, *i.e.*,] that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Wash., 446 U.S. 668, 687-88 (1984). If a defendant does not make both showings, the conviction shall not be reversed. Id. at 687.

"[A]ny deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." Id. at 692. To demonstrate that counsel's deficient performance prejudiced the defense, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in

---

[3] The term James hearing comes from United States v. James, 576 F.2d 1121 (5th Cir. 1978) modified by 590 F.2d 575 (1979) (en banc); and the term Enright hearing comes from United States v. Enright, 579 F.2d 980 (6th Cir. 1978). A James hearing is known as an Enright hearing in this circuit. See United States v. Vinson, 606 F.2d 149, 152 n.3 (6th Cir. 1979).

7

(1:05CV1260, 1:02CR408)

the outcome." Id.

Here, Gallardo argues that his counsel's performance was deficient because he failed to request an Enright hearing, a hearing in which the court outside the presence of the jury makes a preliminary determination that the government has produced sufficient evidence of a conspiracy to admit hearsay statements under the co-conspirator exemption, United States v. Vinson, 606 F.2d 149, 152-53. Even if Gallardo's counsel's performance was deficient, however, his failure to request an Enright hearing did not prejudice the defense. First, an Enright hearing is not required to determine the admissibility of a co-conspirator's statement. Id. The Court may either (1) conduct an Enright hearing, (2) require the government to produce the non-hearsay evidence of conspiracy at trial prior to making the determination of the hearsay's admissibility, or (3) admit the hearsay at trial subject to a later determination of their admissibility. Id. If the hearsay evidence is admitted subject to a later determination of its admissibility and the district court later determines that the evidence is inadmissible, then the court should declare a mistrial. Id. at 153. Thus the protections afforded by the Enright hearing are afforded to a defendant even if the court does not conduct such a hearing. Second, the Sixth Circuit held that the statements were admissible regardless of the applicability of the co-conspirator hearsay objection because they provided context for Gallardo's own admissions. Jacob, 377 F.3d at 581. Consequently, even if Gallardo's counsel would have requested the Enright hearing, the statements still would have been admitted at trial. Thus Gallardo was not prejudiced by his counsel's failure to request an Enright hearing. Consequently, he was not denied the effective assistance of counsel.

(1:05CV1260, 1:02CR408)

**IV**

For the foregoing reasons, Petitioner Ramon Gallardo's Petition to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 1) is DENIED.

IT IS SO ORDERED.

| | |
|---|---|
| August 1, 2005 | */s/ David D. Dowd, Jr.* |
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |